Priority  X
Send  X
Enter  ____
Closed  ____
JS-5/JS-6  ____
JS-2/JS-3  ____
Scan Only____

**FILED**

APR – 4 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

DAVID MICHAEL LOVEJOY,

        Petitioner,

        v.

DARREL G. ADAMS, Warden,

        Respondent.

Case No. SACV 05-01002-CJC (MLG)

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

I.   **Introduction**

    A.   **Procedural Background**

    This is a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.   On July 29, 2002, Petitioner David Michael Lovejoy was charged in a three-count Information in the Orange County Superior Court.   Count 1 alleged that on or about April 1, 2002, Petitioner committed the offense of attempted murder (Cal. Pen. Code §§ 664/187).   It was further alleged that in the commission of that crime, Petitioner personally used a deadly weapon (Cal. Pen. Code §§ 12022, subd. (b)(1)), and personally inflicted great bodily injury



DOCKETED ON CM

APR – 4 2006

BY _____ 040

1   (Cal. Pen. Code § 12022.7(a)).   Counts 2 and 3 alleged that

2   Petitioner unlawfully possessed a firearm after having suffered a

3   prior felony conviction (Cal. Pen. Code § 12021(c)(1)), and escaped

4   from custody after arrest (Cal. Pen. Code § 836.6(b)), a misdemeanor.

5   (Lodg. No. 1 at 162-63).

6       Petitioner originally pleaded not guilty to all charges and

7   denied the enhancement allegations. (Lodg. No. 1 at 164). Prior to

8   trial, Petitioner pleaded guilty to Counts 2 and 3. (Lodg. No. 1 at

9   224-25, 237). Count 1 was tried to a jury. (Lodg. No. 1 at 240).

10  On March 5, 2003, the jury found Petitioner guilty of attempted

11  murder. The jury further found that in the commission of that crime,

12  Petitioner personally used a deadly weapon and personally inflicted

13  great bodily injury. (Lodg. No. 1 at 305-308, 314).

14      On May 23, 2003, the trial court imposed an aggregate term of

15  imprisonment of six years plus life with the possibility of parole

16  on Count 1. The sentence was enhanced by one year for personal use

17  of a deadly weapon, and three years for infliction of great bodily

18  injury. The trial court imposed a consecutive term of two years, the

19  middle term, for unlawful possession of a firearm on Count 2. The

20  trial court imposed a concurrent one-year jail term for misdemeanor

21  escape on Count 3. (Lodg. No. 1 at 398, 403-05).

22      Petitioner timely filed an appeal in the California Court of

23  Appeal. (Lodg. No. 1 at 407). He argued for reversal of the

24  attempted murder conviction, claiming that the prosecutor, in

25  violation of Petitioner's Fifth Amendment right to remain silent,

26  commented during closing argument on Petitioner's failure to testify.

27  (Lodg. Nos. 3-5); *Griffin v. California*, 380 U.S. 609 (1965). The

28  California Court of Appeal rejected Petitioner's claim and found that

2

the prosecutor's statement referred to Petitioner's failure, prior to his arrest, to identify to friends the name of the individual who he claimed committed the stabbing, rather than the failure to testify. Thus, the court found that the prosecutor's statements did not infringe on Petitioner's privilege against self-incrimination. *People v. Lovejoy*, Case No. G032404 (Cal. Ct. App. September 20, 2004). (Lodg. No. 6 at 4). The California Supreme Court denied a Petition for Review on December 15, 2004. (Lodg. Nos. 7-8). This petition followed, alleging the same ground for relief.

Respondent contends that the California Court of Appeal's rejection of Petitioner's claim that his Fifth Amendment right had been violated "was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Untied States Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence presented." (Answer at 7). The matter is ready for decision.

### B.   Facts

Petitioner met the victim, 17 year-old Daniel Stockwell, at a coffee shop in Orange, California on April 1, 2002, when Stockwell asked to "bum" a cigarette. (Lodg. No. 2 at 132-34, 195-96). Petitioner gave Stockwell a hand-rolled cigarette and the two talked while they smoked. (Lodg. No. 2 at 135-36). They left the coffee shop and walked to the rear of a nearby church to smoke another cigarette, after which Petitioner sexually propositioned Stockwell. (Lodg. No. 2 at 136, 202). Stockwell declined, but stayed to talk at Petitioner's request. (Lodg. No. 2 at 141-42). Stockwell felt mentally impaired as a result of smoking Petitioner's hand rolled cigarettes. (Lodg. No. 2 at 135). Stockwell eventually returned to

3

his near-by home and prepared for bed. (Lodg. No. 2 at 148-50, 217-18). Shortly after arriving at home, Stockwell heard a stone strike his window. Petitioner was outside the window and told Stockwell, "I've got more cigarettes. If you want one, come down." (Lodg. No. 2 at 151, 218). Stockwell went back to the churchyard to get another cigarette from Petitioner. (Lodg. No. 2 at 155-56). After smoking their cigarettes, Petitioner stabbed Stockwell in the neck, chest, and stomach before Stockwell was able to escape and get help. (Lodg. No. 2 at 156, 158-65, 229).

Two days after the stabbing, Petitioner told his girlfriend, Natalie Duty, about the incident. (Lodg. No. 2 at 260-62). He told Duty that a male had "hit" on him and a friend while they were at Starbuck's and made them feel uncomfortable. (Lodg. No. 2 at 260-62, 267, 286-87, 294). Petitioner told her that he went to Johnny Cabrera's house where he got a knife. He and his friend then went to the churchyard, where they met the man who had "hit" on them. Petitioner told Duty that the friend stabbed Stockwell, after which Petitioner fled. (Lodg. No. 2 at 262-65, 268, 287-88, 295). Petitioner refused to tell Duty the name of this friend. Duty urged Petitioner to call the police. (Lodg. No. 2 at 268-69).

Around the same time that Petitioner spoke to Duty, he told Stephanie Ramirez that he had obtained a knife from Johnny Cabrera's house and then gave it to his friend. However, he again did not identify the person who stabbed Stockwell. (Lodg. No. 2 at 355, 358, 365-66, 369). Johnny Cabrera, Ramirez's boyfriend, testified that Petitioner came to his house on the night of April 1, 2002 and asked for a knife. Petitioner told him that a male had "hit" on him, that he beat the male up, and that he needed a knife to "finish the job."

4

1  Petitioner also commented that he hated "queers and faggots." (Lodg.
2  No. 2 at 325-28).

3      Petitioner also discussed the incident with an acquaintance,
4  Michael Early.  He told Early that he was on the run from the police
5  because he stabbed someone in the stomach, neck, and arm.  (Lodg. No.
6  2 at 305-06).  Petitioner did not tell Early that anyone else had
7  done the stabbing.  (Lodg. No. 2 at 317).  Petitioner was arrested
8  several weeks after the stabbing. While being transported to the
9  county jail, he slipped his handcuffs and escaped.  He was captured
10  that same evening after an intensive manhunt.  (Lodg. No. 2 at 381-
11  85).

12

13  **II.  Standard of Review.**

14      Under the Antiterrorism and Effective Death Penalty Act of 1996
15  ("AEDPA"), 28 U.S.C. § 2254(d)(1), a federal court may grant a writ
16  of habeas corpus to a state prisoner on a claim that was decided on
17  the merits in state court only if the state court's decision was
18  "contrary to, or involved an unreasonable application of, clearly
19  established Federal law, as determined by the Supreme Court of the
20  United States" or if the ruling was "based on an unreasonable
21  determination of the facts in light of the evidence presented."

22      A state court decision is "contrary to" clearly established
23  federal law if the state court failed to apply the correct
24  controlling authority from the Supreme Court. *Williams* v. *Taylor*, 529
25  U.S. 362, 405-06 (2000).  The Supreme Court has explained that a
26  decision is contrary to clearly established federal law if the state
27  court "applies a rule that contradicts the governing law set forth
28  in [the Supreme Court's] cases" or if it "confronts a set of facts

1  that are materially indistinguishable from a decision of this Court
2  and nevertheless arrives at a result different from our precedent."
3  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at
4  405-06).   A state court need not cite or even be aware of Supreme
5  Court precedents, "so long as neither the reasoning nor the result
6  of the state-court decision contradicts them." *Mitchell v. Esparza*,
7  540 U.S. 12, 16 (2003) (citing *Packer*, 537 U.S. at 7).

8       A state court decision involves an "unreasonable application of"
9  clearly established federal law if the state court identifies the
10  correct governing legal principle from the decisions of the Supreme
11  Court, but unreasonably applies that principle to the facts of the
12  case.   *Williams*, 529 U.S. at 407-08, 413.   Under this standard, a
13  habeas court may not issue the writ simply because it concludes "in
14  its independent judgment" that the state court decision is incorrect
15  or erroneous. *Williams*, 529 U.S. at 410, 412; *Woodford v. Visciotti*,
16  537 U.S. 19, 24-25 (2002).   The reviewing court must find that the
17  state court's application of clearly established law was objectively
18  unreasonable.   *Williams*, 529 U.S. at 409.

19       The California Supreme Court denied review in this case.   When
20  the California Supreme Court has summarily denied a claim, without
21  giving a rationale, this is considered a denial "on the merits," and
22  is presumed to rest on grounds articulated by a lower court in its
23  written opinion.   *Ylst v. Nunnemaker*, 501 U.S. 797, 803-806 (1991);
24  *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).
25  Thus, a reviewing court may "look through" the unexplained summary
26  denial to a lower state court's reasoned decision.   Here, the last
27  reasoned decision by a state court was the opinion of the Fourth
28  Appellate District of the California Court of Appeal.   (Lodg. No. 6).

III. **Discussion and Analysis**

Petitioner contends that the prosecutor committed constitutional error when she commented during rebuttal argument about Petitioner's failure to identify the person whom Petitioner had told his friends had stabbed Daniel Stockwell.  This comment was made in response to defense counsel's argument that Petitioner had been vague when talking to his friends about the identity of the assailant because he was feared this person. (Lodg. No. 2 at 532).

The prosecutor stated:

"Now, defendant has a new theory that oh, well, somebody else really did the stabbing, some anonymous phantom, random, apparently, person.  We don't know who it was.  But Defendant's been too afraid to tell anybody who it was.  That's what you just heard from his defense counsel.  He's afraid of whoever did it.  [¶]  And when it got ugly, he told Natalie when it got ugly, he got out of there.  But does that hold together?  Does that make sense to reasonable people that that would happen? [¶]  Does that make sense that there is a person out there who committed a horrific stabbing, he's now charged with attempted, premeditated, deliberated murder; and he won't tell who that person is?"

(Lodg. No. 2 at 546-47).

Defense counsel objected to the prosecutor's statement and, out of the presence of the jury, asked for a mistrial based on *Griffin* error.  *Griffin v. California*, 380 U.S. 609 (1965).  The prosecutor explained that she was making a point about Petitioner's statements to his friends and those friends' testimony that Petitioner did not report the incident to the police, despite their urging.  (Lodg. No.

1 | 2 at 548).

2 |     The trial court denied the mistrial motion.  (Lodg. No. 2 at
3 | 547-50).  The court acknowledged that it was possible to interpret
4 | the prosecutor's statements as an indirect comment on Petitioner's
5 | right not to testify.  (Lodg. No. 2 at 549).  However, after
6 | considering the statement in context, the trial court interpreted the
7 | prosecutor's comment as "attributable to his failure to tell the
8 | friends who testified and the failure to do things that a person
9 | would have done in light of the proffered defense theory."  (Lodg.
10 | No. 2 at 549).  The trial court denied the motion for mistrial, but
11 | warned the prosecutor against making inferences as to Petitioner's
12 | failure to testify.  (Lodg. No. 2 at 549).

13 |     In reviewing this decision, the California Court of Appeal held
14 | that:

15 |     "Even though the prosecutor mentioned the attempted murder
16 |     charge during her argument, we do not believe this transformed
17 |     the tenor of her remarks from a general skepticism about
18 |     Lovejoy's pretrial statements to an indictment on his failure
19 |     to testify.  Rather, we agree with the trial court that,
20 |     considered in context, the argument was properly targeted at
21 |     Lovejoy's silence prior to trial.  Exercising our independent
22 |     judgment on the issue [citation], we do not believe the
23 |     prosecutor's remarks constituted *Griffin* error. [Citations]."
24 | *People v. Lovejoy*, slip op. at 4-5.

25 |     The Fifth Amendment forbids the state or the court from
26 | commenting on a defendant's decision not to testify.  *Griffin v.*
27 | *California*, 380 U.S. 609 (1965).  However, the *Griffin* rule does not
28 | preclude a prosecutor from commenting on the nature of the evidence.

1 │ *United States v. Mende*, 43 F.3d 1298, 1301 (9th Cir. 1995). The
2 │ question in this case is whether the prosecutor's comments were
3 │ manifestly intended to call attention to the defendant's failure to
4 │ testify or were of such a character that the jury would naturally and
5 │ necessarily take it to be a comment on the defendant's failure to
6 │ testify as opposed to a comment on a permissible subject. *Beardslee*
7 │ *v. Woodford*, 358 F.3d 560, 586 (9th Cir. 2003); *Lincoln v. Sunn*, 807
8 │ F.2d 805, 809 (9th Cir. 1987).

9 │ As noted by the trial judge, the prosecutor's argument was
10 │ troublesome. This court agrees that the prosecutor's inclusion of
11 │ the phrase, "he's now charged with attempted, premeditated,
12 │ deliberated murder", could be construed as an oblique comment on
13 │ Petitioner's failure to testify. However, having reviewed the
14 │ prosecutor's comments in the context of her argument, it does not
15 │ appear that her statement was intended to call attention to the
16 │ defendant's failure to testify or was of such a character that the
17 │ jury would naturally and necessarily take them to be a comment about
18 │ the defendant's failure to testify, which is required for *Griffin*
19 │ error. The challenged comment was made in the context of describing
20 │ Petitioner's statements to his friends about the unnamed perpetrator
21 │ of the stabbing. The apparently inadvertent reference to being
22 │ charged with attempted murder does not transform this statement
23 │ commenting on Petitioner's theory of the case into an
24 │ unconstitutional comment on Petitioner's failure to testify. The
25 │ decisions of the California courts were an objectively reasonable
26 │ application of *Griffin* to the facts of this case.

27 │ Even assuming that the statement could be deemed to be *Griffin*
28 │ error, Petitioner has not established that the statement rendered his

9

1 trial fundamentally unfair. *Griffin* errors are trial errors and are
2 subject to harmless error review. *Rice v. Wood*, 77 F.3d 1138, 1143
3 (9th Cir. 1996). Trial type errors do not give rise to habeas relief
4 unless the error alleged "had a substantial and injurious effect or
5 influence in determining the jury's verdict." *Brecht v. Abrahamson*,
6 507 U.S. 619, 637 (1993). Based upon the overwhelming evidence of
7 Petitioner's guilt, including the victim's identification of
8 Petitioner and Petitioner's admissions and statements to his friends,
9 the court cannot conclude that the prosecutor's fleeting comment,
10 even if deemed error, met the *Brecht* standard. The challenged
11 statement simply did not render this trial so fundamentally unfair
12 as to result in a denial of a constitutional right. Relief is not
13 warranted.

14

15 **III. Conclusion**

16     For the reasons stated above, the petition for habeas corpus
17 should be DENIED.

18

19 Dated: April 4, 2006

20
21 Marc L. Goldman
   United States Magistrate Judge

10